UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

COHEN LANS LLP,

                                        Plaintiff,                    14-CV-4045 (JPO)

                    -v-                                        OPINION AND ORDER

DAVID M. NASEMAN,

                                        Defendant.

J. PAUL OETKEN, District Judge:

 Cohen Lans LLP ("Cohen Lans") initiated this action against David M. Naseman, an

attorney proceeding *pro se*, to recover unpaid legal fees and expenses in connection with Cohen

Lans' legal representation of Naseman in a civil action from 2007 to 2009.  (Dkt. No. 15

("Compl.").)  Naseman filed a counterclaim against Cohen Lans, adding as Counterclaim-

Defendants Robert S. Cohen, Deborah E. Lans, Ryan Weiner, and Dan Rottenstreich, all of

whom were attorneys at Cohen Lans.  (Dkt. No. 83.)  Before the Court are cross-motions for

summary judgment filed by Cohen Lans along with the additional Counterclaim-Defendants

(Dkt. No. 123), and by Naseman (Dkt. No. 133).  For the reasons that follow, Cohen Lans' and

the additional Counterclaim-Defendants' motion for summary judgment is granted and

Naseman's motion for summary judgment is denied.

## I. Background

 The following facts are taken from the parties' 56.1 statements and are undisputed unless

otherwise noted.

### A.  The Harding Action

 On November 13, 2007, Naseman retained Cohen Lans to represent him in connection

with a lawsuit brought against him by his ex-wife Toehl Harding (the "Harding Action").  (Dkt.

No. 145 ¶¶ 4-6.)  In the Harding Action, Harding raised twelve causes of action against

Naseman, including two fraud claims, alleging that Naseman improperly hid over $4 million in

income when she and Naseman negotiated their 1993 Property Settlement Agreement ("PSA") as

part of their divorce.  (*Id.* ¶ 6.)  (Cohen Lans did not represent Naseman in connection with the

negotiation of the PSA.  (*Id.* ¶ 47.))  Harding claimed that Naseman created a false federal

income tax return showing income much lower than that reported on his actual tax return.  (*Id.*

¶¶ 7-8.)  Naseman also filed a counterclaim for attorney's fees.  (*Id.* ¶ 41.)

Naseman and Cohen Lans signed a written retainer agreement in connection with the

representation.  (*Id.* ¶ 10.)  The agreement included the hourly rates and reimbursements which

Naseman would pay Cohen Lans, including a retainer of $50,000, which was to be credited

against the time and disbursements charged to Naseman.  (*Id.* ¶¶ 13-15.)  However, the retainer

agreement did not include express integration, modification, or attorney's fees provisions.  (Dkt.

No. 141 ¶ 2.)  Cohen Lans represented Naseman for the duration of the Harding Action before

Judge Patterson in the Southern District of New York, including through trial.  (Dkt. No. 145

¶ 12.)

Cohen Lans also engaged in efforts to settle the Harding Action.  For example, on

December 7, 2007, Cohen Lans sent a letter to Harding's counsel discussing her claims.  (*Id.*

¶ 17.)  And on December 18, 2007, Harding's counsel proposed a walk-away settlement

agreement to Cohen Lans partner Robert Cohen (the "December Settlement"), which Cohen then

shared with Naseman, who agreed to the proposal.  (*Id.*  ¶¶ 18-19.)  On December 19, 2007,

Cohen informed Judge Patterson that Harding had agreed to withdraw the lawsuit.  (Dkt. No. 141

¶ 8; Dkt. No. 145 ¶ 20.)  Cohen also informed Naseman that Harding's counsel had requested the

exchange of mutual releases, which Cohen agreed to, and Rottenstreich forwarded a draft release

to Naseman—but did not request that Naseman sign and return the release.  (Dkt. No. 141 ¶¶ 24-

26.)  The parties dispute whether Cohen Lans advised Naseman that the settlement was contingent upon arriving at a release mutually acceptable to Harding and Naseman.  (*Id.* ¶¶ 29.) In discussing the confidentiality provisions of the proposed settlement agreement, Mr. Naseman informed Cohen Lans that he "must" be able to respond to inquiries about the allegations in the Harding Action.  (Dkt. No. 145 ¶¶ 24-25.)

The parties dispute whether Judge Patterson then "so-ordered" the settlement; Naseman claims that Judge Patterson did, but Cohen Lans claims that Judge Patterson only approved the adjournment of a scheduling conference.  (Dkt. No. 141 ¶¶ 8-9.)  Through December 31, 2007, less than $19,000 in fees and costs had been incurred by Cohen Lans in connection with its representation of Naseman.  (*Id.* ¶ 16.)

Notwithstanding the putative settlement, the parties continued to litigate the Harding Action.  On May 27, 2008, Cohen Lans filed a motion for summary judgment on Naseman's behalf, seeking to dismiss Harding's claims in their entirety and to enforce the December 2007 settlement.  (Dkt. No. 145 ¶ 33.)  Cohen Lans did not seek an evidentiary hearing on Naseman's summary judgment motion.  (Dkt. No. 141 ¶ 11.)  On August 1, 2008, Harding filed a motion to dismiss Naseman's counterclaim for attorney's fees, which Cohen Lans successfully opposed. (Dkt. No. 145 ¶¶ 41-42.)  On October 2, 2008, Cohen Lans partner Deborah Lans again raised the possibility of a "mutual 'walk[-a]way'" agreement.  (*Id.* ¶ 26.)  On November 13, 2008, Judge Patterson granted Naseman's motion for summary judgment as to Harding's ten non-fraud claims, denied the motion as to the enforcement of the settlement agreement, and allowed the two fraud-based claims to proceed to trial.  (*Id.* ¶¶ 36-38.)

A bench trial was held before Judge Patterson from December 16 to 19, 2008.  (*Id.* ¶ 39.) At trial, Cohen Lans presented evidence in support of Naseman's fees counterclaim, but did not call Cohen as a witness to testify concerning the potential settlement.  (*Id.* ¶¶ 28, 43; Dkt. No.

141 ¶ 15.)  On July 8, 2009, Judge Patterson issued an Opinion and Order dismissing Harding's

remaining fraud-based claims.  (Dkt. No. 145 ¶ 40.)  The Opinion and Order also dismissed

Naseman's fees counterclaim on the basis that the parties' PSA precluded the requested relief.

(*Id.* ¶ 45.)

       Cohen Lans terminated its representation of Naseman by letter dated July 20, 2009.  (*Id.*

¶ 48.)  Both Harding and Naseman filed notices of appeal from the July 8, 2009, Opinion and

Order; Naseman retained separate appellate counsel to do so.  (*Id.* ¶¶ 49-50.)  On May 14, 2010,

the United States Court of Appeals for the Second Circuit affirmed Judge Patterson's Order in its

entirety.  (*Id.* ¶ 51.)

### B.  The Fee Dispute

       Throughout Cohen Lans' representation of Naseman, it sent him (and he received) a

series of bills reflecting current charges and unpaid balances.  (*Id.* ¶¶ 52-53, 55.)  The bills

include some identification of the tasks being performed and the costs incurred, though the

parties dispute the completeness and specificity of the bills.  (*Id.* ¶¶ 59-60.)  Naseman concedes

that his defense in the Harding Action required, for certain periods, a significant amount of time

and effort by attorneys who were working long hours, and that it was "very important" to

Naseman that he win the Harding Action.  (*Id.* ¶¶ 67-68, 70.)  After the termination of its

representation, Cohen Lans sent Naseman statements of accounts reflecting an unpaid balance

due.  (*Id.* ¶ 54.)  Naseman's last payment to Cohen Lans was for $300,000 in December 2008.

(*Id.* ¶ 56, 62.)  This payment was made after repeated warnings from Cohen and Lans that if

Naseman failed to pay prior to the commencement of the trial, Cohen Lans would cease its

representation.  (Dkt. No. 141 ¶¶ 42-45.)  Cohen Lans alleges, though Naseman denies, that

Naseman owes Cohen Lans $651,867.68 for legal services it provided him and disbursements it

incurred on his behalf in the period after November 2008, including for trial preparation and

post-trial submissions.  (Dkt. No. 145 ¶¶ 65-66.)  The parties agree that this sum includes $12,000 that Cohen Lans paid in expert fees relating to the Harding Action.  (Dkt. No. 141 ¶ 54.) Naseman claims, though Cohen Lans denies, that following Cohen Lans' termination of representation, Naseman proposed a settlement of claims between the two parties.  (*Id.* ¶¶ 51-52.)

Cohen Lans claims, though Naseman denies, that Naseman has a pattern of claiming non-performance by professionals who seek to be paid by him for services rendered.  (Dkt. No. 145 ¶ 72.)  Naseman admits that he has been sued for non-payment for professional services no fewer than five times, including the instant action, with one such lawsuit resulting in significant liability for him.  (*Id.* ¶ 73.)  For example, Naseman was sued for unpaid fees and costs by both his appellate counsel and the handwriting expert in the Harding Action.  (*Id.* ¶¶ 75, 78.) Moreover, in some instances, malpractice or non-performance were among the issues involved in the lawsuits.  (*Id.* ¶ 74.)

Cohen Lans initiated this action on June 4, 2014 (Dkt. No. 1), and filed the operative, Amended Complaint on September 2, 2014 (Compl.).  Cohen Lans asserts four claims relating to Naseman's alleged failure to pay for its legal services: (1) breach of contract; (2) account stated; (3) unjust enrichment; and (4) quantum meruit.  (Compl. ¶¶ 33-51.)  Naseman asserts counterclaims alleging that Cohen Lans and some of its attorneys—Cohen, Lans, Weiner, and Rottenstreich—are liable for malpractice, breach of contract, and breach of fiduciary duty as a result of, among other things, their failure to settle the civil suit before trial.  (*See* Dkt. No. 83.) Cohen Lans initially moved for summary judgment on its claims and on Naseman's counterclaims on October 22, 2014, before the completion of discovery.  (Dkt. No. 26.)  This Court denied that motion without prejudice as "premature."  (Dkt. No. 65.)  The parties now cross-move for summary judgment.

## II.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009) (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)).

On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, i.e., that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014) (citing Fed. R. Civ. P. 56(c); *Liberty Lobby*, 477 U.S. at 250-51). The court views all evidence "in the light most favorable to the nonmoving party" and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (internal quotation marks omitted).

## III.    Discussion

Cohen Lans and Naseman[1] each move for summary judgment on Cohen Lans' breach of contract and account stated claims, with Naseman raising several affirmative defenses and Cohen

---

[1]     Naseman is an attorney proceeding *pro se*. (Dkt. No. 130 ¶ 1.) "Though courts are obliged to construe pro se pleadings liberally, this presumption does not apply to attorneys representing themselves." *Manchanda v. Google*, No. 16 Civ. 3350, 2016 WL 6806250, at *1 n.1 (S.D.N.Y. Nov. 16, 2016) (citing *Tracy v. Freshwater*, 623 F.3d 90, 102 (2d Cir. 2010)).

Lans claiming that it is entitled to prejudgment interest.  All Counterclaim-Defendants move for summary judgment on Naseman's counterclaims.

### A.  Cohen Lans' Claims

#### 1.  Breach of Contract

"Under New York law, a breach of contract claim requires proof of (1) an agreement, (2) adequate performance by the plaintiff, (3) breach by the defendant, and (4) damages." *Clopay*, 2014 WL 4652548, at *4 (quoting *Fischer & Mandell, LLP v. Citibank, N.A.*, 632 F.3d 793, 799 (2d Cir. 2011)).

The parties agree as to the existence and terms of the retainer agreement, which included hourly rates and reimbursements that Naseman would pay to Cohen Lans, and required a $50,000 retainer fee that would be credited against time and disbursements charged.  (Dkt. No. 145 ¶ 10-15.)  The retainer agreement specified that Naseman had "chosen [Cohen Lans] to represent [him] in connection with the lawsuit brought against [him] (Toehl Harding v. David Naseman . . . )."  (Dkt. No. 127 Ex. 1 at 2.)  The retainer agreement was prepared by Cohen Lans and was signed by Naseman.  (*See id.*)

Cohen Lans adequately performed under the contract.  Cohen Lans represented Naseman through the entirety of the Harding Action, including through trial, as was required by the terms of the agreement between the parties.  (Dkt. No. 145 ¶ 12.)  Cohen Lans' representation of Naseman was successful: it resulted in dismissal of ten of the twelve claims against Naseman prior to trial and dismissal of the remaining two at trial.  (*Id.* ¶¶ 36-38, 40.)  Cohen Lans also engaged in attempts to settle the action.  (*Id.* ¶ 17.)  Naseman concedes that his defense in the Harding Action required significant time and effort from the attorneys at Cohen Lans, and that it was "very important" to him that he prevail.  (*Id.* ¶¶ 67-68, 70.)  In light of these undisputed

facts, Cohen Lans adequately performed its obligation under the contract to represent Naseman in connection with the Harding Action.

In opposition, Naseman makes a series of arguments regarding the failure of the December Settlement. Naseman argues that the failure of the settlement amounts to a failure of adequate performance by Cohen Lans. He alternatively argues that the parties had modified the contract to require no further payment from Naseman due to the December Settlement.

First, Naseman argues that Cohen Lans did not adequately perform under the contract because "the agreed upon primary objective of [the] engagement . . . was to reach a prompt settlement or other dismissal of the Harding Action and within the $50,000 retainer," and Cohen Lans failed to finalize the December Settlement. (Dkt. No. 144 at 12.) However, the written retainer agreement between the parties belies this claim, as it expressly contemplated that "[i]f this matter is not promptly resolved, the retainer will likely be exceeded." (Dkt. No. 127 Ex. 1.) Moreover, Naseman continued to consent to Cohen Lans' continued representation through trial, including his payment of the firm's bills in December 2008, nearly one year after the failed settlement. And though he was in regular communication with Cohen Lans after the failed settlement, Naseman never objected to Cohen Lans' representation as a breach of the parties' contractual arrangement until the instant litigation. Naseman has provided no evidence beyond his own testimony that his agreement with Cohen Lans included the restrictive terms he claims that it included, and such claims are contradicted by contemporaneous record evidence.

Next, Naseman relies on Cohen Lans' alleged failure to finalize the settlement as an indication of inadequate performance. Naseman argues that Cohen Lans' lawyers failed to take actions required to implement the settlement in the first instance and that Cohen Lans did not adequately perform by failing to call Cohen as a witness at trial, because his testimony would have been "instrumental" in establishing that the December Settlement should be enforced.

8

(Dkt. No. 144 at 13-14; Dkt. No. 131 at 9-10.)  However, for reasons discussed in depth below in the context of Naseman's malpractice counterclaim, these strategic decisions fall within the scope of Cohen Lans' representation of Naseman and do not amount to a failure by Cohen Lans to adequately perform under the retainer agreement.

Alternatively, Naseman suggests (in his Rule 56.1 Statement) that the parties orally modified the retainer agreement around the time of the December Settlement such that "Cohen Lans agreed that no amounts would be due from Naseman until the December Settlement was enforced," and that Cohen promised Naseman that he "had nothing to worry about" and that Cohen "would make sure that Naseman was not adversely affected in any way."  (Dkt. No. 141 ¶ 17, 34.)

However, Naseman's August 21, 2015, deposition testimony contradicts his claim that the relevant conversation was sufficient to constitute a binding modification of the contract.  *See Bensen v. Am. Ultramar Ltd.*, No. 92 Civ. 4420, 1997 WL 66780, at *7 (S.D.N.Y. Feb. 14, 1997) ("To prove modification of a contract, all the elements of contract formation must be shown, including mutual assent . . . .").  In his deposition, Naseman testified that Cohen never explicitly told him that he would be responsible for his legal fees and that he does not remember the words Cohen used to convey that intention.  (Dkt. No. 125 Ex. 1 at 226 ("Q. Mr. Cohen never said to you that Cohen Lans would not be charging for the legal bills and the legal work going forward, correct?  A. He didn't use words to that effect. . . .  A. I don't remember the exact language of that particular issue.").)  And Cohen's nonspecific reassurances that Naseman "had nothing to worry about" or Naseman's claim in his deposition that Cohen communicated the "thought" of the modification "in other language" (*see* Dkt. No. 125 Ex. 1 at 227), are insufficiently concrete to form a binding contract.  Vague or uncertain offers or acceptances are insufficient to form or modify an enforceable contract.  *See, e.g.*, *United Res. Recovery Corp. v. Ramko Venture Mgmt.*,

*Inc.*, No. 07 Civ. 9452, 2009 WL 2746232, at *6 (S.D.N.Y. Aug. 28, 2009) (finding that a "vague and ambiguous statement" that a party would be "taken care of" was "too indefinite to form a legally enforceable contract"); *Major League Baseball Props., Inc. v. Opening Day Prods., Inc.*, 385 F. Supp. 2d 256, 271 (S.D.N.Y. 2005) (finding the statement "we'll compensate you" insufficient to constitute a meeting of the minds for the purposes of forming a binding contract).

Documentary evidence further contradicts Naseman's claim of an oral modification in early 2008.  First and foremost, there is a complete absence of any written evidence of the modification.  Second, Cohen Lans continued sending bills to Naseman for fees and costs after the date of the alleged modification.  (Dkt. No. 126 Ex. 8.)  Additionally, Naseman's emails after the purported modification expressly acknowledged his obligation to pay, including an email sent in January of 2009 suggesting that he "needed to mortgage [his] properties in order to pay legal expenses."  (Dkt. No. 140 Ex. 6.)  And finally, Naseman actually paid his bill in December of 2008.

Returning to the final elements of Cohen Lans' breach of contract claim, Naseman's discontinuation of required payments under the contract amounts to a breach that has caused damages to Cohen Lans.  The parties agree that Naseman has not made any payments to Cohen Lans since December 2008.  (Dkt. No. 145 ¶¶ 56, 62.)

Considering these facts together, the Court finds that no rational jury could conclude that Naseman was not in breach of his contract with Cohen Lans.  Naseman is thus responsible for additional bills incurred after his breach, which Cohen Lans alleges amount to $651,867.68. (Dkt. No. 129 at 7.)

### 2.   Account Stated

Cohen Lans is alternatively entitled to relief on its claim for account stated.  "To prevail on a claim for account stated under New York law, a plaintiff must establish that (i) an account was presented; (ii) it was accepted as correct; and (iii) the debtor promised to pay the amount stated."  *Microban Prods. Co. v. API Indus., Inc.*, No. 14 Civ. 41, 2014 WL 1856471, at *16 (S.D.N.Y. May 8, 2014) (citing *Kasper Global Collection & Brokers, Inc. v. Global Cabinets & Furniture Mfrs. Inc.*, 952 F. Supp. 2d 542, 570 (S.D.N.Y. 2013)).  "The second and third elements of account stated 'may be implied if a party receiving a statement of account keeps it without objecting to it within a reasonable time or if the debtor makes partial payment.'" *Kasper*, 952 F. Supp. 2d. at 570 (quoting *IMG Fragrance Brands, LLC v. Houbigant, Inc.*, 679 F. Supp. 2d 395, 411 (S.D.N.Y. 2009)).  "An objection to an account stated that is first made only after litigation on the account stated has been commenced is, as a matter of law, not made within a reasonable time."  *White Diamond Co., Ltd. v. Castco, Inc.*, 436 F. Supp. 2d 615, 623 (S.D.N.Y. 2006).

Here, Naseman acknowledges that Cohen Lans regularly sent him bills for the work it performed on his behalf under the retainer agreement.  (Dkt. No. 145 ¶¶ 52-53, 55.)  There is no dispute that Naseman accepted these bills, made payment on them through December of 2008, and did not contemporaneously object to them.  (*Id.* ¶ 56, 62.)  Indeed, Cohen Lans provides documentary evidence of the numerous bills it sent to Naseman, which indicate that he paid Cohen Lans for its services as late as December 2008.  (Dkt. No. 126 Ex. 8 at 32.)  Naseman provides no documentary evidence to the contrary.  This is sufficient to prove Cohen Lans' claim for account stated beyond genuine dispute.  *See Microban*, 2014 WL 1856471, at *16; *Kasper*, 952 F. Supp. 2d at 570.  And—unlike in the cases denying summary judgment cited by Naseman—the amount of the account stated here is clearly documented in a series of reasonable,

regular statements, which give the Court no basis to believe that they were the product of fraud or gratuitous over-billing.  *See Meadowbrook-Richman, Inc. v. Associated Fin. Corp.*, 325 F. Supp. 2d 341, 360-61 (S.D.N.Y. 2004) (denying account stated claim where "the amount claimed was the product of fraud"); *Farley v. Promovision Video Displays Corp.*, 198 A.D.2d 122, 124 (N.Y. App. Div. 1st Dep't 1993) (denying summary judgment where the legitimacy of a debt was a "pronounced . . . factual issue").

Naseman argues that the account stated claim must fail because he orally informed Cohen Lans on a single occasion during a phone call with Lans in August or September 2009—after the termination of Cohen Lans' representation—that he did not intend to pay.  (Dkt. No. 130 ¶ 22.) He also claims that he orally objected to reimbursing Cohen Lans for expert witness fees it advanced him in March of 2009.  (*Id.* ¶ 21.)  While "summary judgment on an account stated claim is inappropriate where the evidence shows that there was a dispute about the account or the quality of the work performed," *Kasper*, 952 F. Supp. 2d at 571, "'[u]nsubstantiated claims of oral objections do not create a material issue of fact' sufficient to defeat summary judgment," *Premier Steel, Inc. v. Hunterspoint Steel LLC*, No. 10 Civ. 4206, 2010 WL 5248583, at *3 (S.D.N.Y. Dec. 16, 2010) (quoting *White Diamond*, 436 F. Supp. 2d at 624).

Naseman provides no evidence for his objections beyond his own say-so and a copy of allegedly contemporaneous handwritten notes that were never shared with Cohen Lans.  These notes did not object to any particular bill; in them, Naseman wrote only that Cohen Lans had "no more coming."  (Dkt. No. 130-4 at 49-50; *see* Dkt. No. 125 Ex. 1 at 212-221.)  Through much of the representation, Naseman accepted, and even paid, Cohen Lans' bills.  (Dkt. No. 145 ¶¶ 56, 62.)  His unsubstantiated and nonspecific claims that he no longer wanted to pay or that he objected to the expert costs are insufficient to defeat summary judgment on the account stated claim.  *See Samara v. Gangemi & Gangemi*, No. 02 Civ. 1407, 2005 WL 1076320, at *2-3

12

(E.D.N.Y. May 3, 2005) (finding arguments by a client that an attorney's bills were "outrageous" and the quality of work poor insufficient to defeat an account stated claim where the arguments were unsubstantiated by a writing); *Lankler Siffert & Wohl, LLP v. Rossi*, 287 F. Supp. 2d 398, 408 (S.D.N.Y. 2003) (granting summary judgment on a law firm's account stated claim where "alleged objections" by a client to the firm's bills were "conclusory and unsubstantiated"), *aff'd*, 125 F. App'x 371 (2d Cir. 2005).

Under very similar facts, the First Department in *Levisohn, Lerner, Berger & Langsam v. Gottlieb*, 309 A.D.2d 668 (N.Y. App. Div. 1st Dep't 2003), affirmed the grant of summary judgment in favor of the plaintiff law firm on its account stated claim where the firm established that it regularly sent out invoices that defendant client periodically paid without objection, even where defendant later claimed that he had orally objected. The First Department concluded that summary judgment was justified where the record contained "some 24 separate account statements sent by plaintiff law firm to defendant over a one-year period, with no indication of objection" and plaintiff failed to "specify the substance of the alleged conversations" raising his objections. *Id.* at 668. So too here: summary judgment is justified where Cohen Lans has provided documentary evidence of over a dozen account statements sent to Naseman beginning in December of 2007 (Dkt. No. 126 Ex. 8), and showing payment as late as December of 2008 (*id.* at 32), with no indication of objection beyond Naseman's conclusory allegations that he belatedly informed Cohen Lans of his intention to stop paying.

Moreover, the delayed timing of Naseman's alleged objection—in late 2009, long after he had received the regular bills for nearly two years and even paid many of them and long after his final payment in late 2008—is not reasonable as a matter of law with respect to all but the very last of his bills. *See In re Rockefeller Ctr. Props.*, 272 B.R. 524, 543 (Bankr. S.D.N.Y. 2000) ("It is well settled that the court can determine on summary judgment what constitutes a

13

'reasonable time' to object to a statement of account." (quoting *Kramer Levin Nessen Kamin &*
*Frankel v. Aronoff*, 638 F. Supp. 714, 720 (S.D.N.Y. 1986))).  This extended delay before the
raising of Naseman's objection is in line with delays that other courts have deemed unreasonable
as a matter of law.  *See, e.g.*, *Am. Home Assur. Co. v. Instituto Nacional De Reaseguros*, No. 88
Civ. 0917, 1991 WL 4461, at *4 (S.D.N.Y. Jan. 10, 1991) (granting summary judgment on an
account stated claim where a party failed to object for four months); *see generally Lockwood v.*
*Thorne*, 11 N.Y. 170, 174 (1854) ("If this case rested upon the question of reasonable notice, I
cannot doubt but the lapse of nine months after the receiving of the account before the
commencement of the action, there having been made in the mean time no objection or
complaint, would have been abundant to authorize the legal inference of acquiescence . . . .").

For these reasons, there is no genuine dispute that Cohen Lans has established the
elements of its account stated claim.

### 3.   Naseman's Defenses: Laches, Equitable Estoppel, Unclean Hands

In Naseman's motion for summary judgment, he raises several defenses that he claims
preclude judgment in favor of Cohen Lans.  First, he argues that the entire complaint must be
dismissed due to laches.  (Dkt. No. 131 at 17.)  Second, he argues that equitable estoppel
precludes Cohen Lans' claims.  (*Id.* at 21.)  Third, he argues that Cohen Lans' equitable claims
must be dismissed due to unclean hands.  (*Id.* at 25.)

#### a.   Laches

Naseman argues that the doctrine of laches estops Cohen Lans from asserting its claims
here, as it "unreasonably delayed for over five years."  (Dkt. No. 131 at 18.)  Naseman claims
that this delay resulted in "substantial[] and irrevocabl[e] prejudice[]," due to the absence of
relevant documentation and lapses in memory.  (*Id.* at 19.)

14

Laches "bars a plaintiff's equitable claim where he is 'guilty of unreasonable and inexcusable delay that has resulted in prejudice to the defendant.'" *Ivani Contracting Corp. v. City of N.Y.*, 103 F.3d 257, 259 (2d Cir. 1997) (quoting *Goodman v. McDonnell Douglas Corp.*, 606 F.2d 800, 804 (8th Cir. 1979)). "Laches cannot be a defense to a legal action for damages if the action was commenced within the statute of limitations period." *Maxim Grp. LLC v. Life Partners Holdings, Inc.*, 690 F. Supp. 2d 293, 310 (S.D.N.Y. 2010); *see generally United States v. Mack*, 295 U.S. 480, 489 (1935) ("Laches within the term of the statute of limitations is no defense at law.")

As regards Cohen Lans' legal claims—breach of contract, account stated, and quantum meruit[2]—the applicable statute of limitations is six years. N.Y. C.P.L.R. § 213; *see Bice v. Robb*, 324 F. App'x 79, 81 (2d Cir. 2009). Cohen Lans commenced the instant action on June 4, 2014, which was less than six years from the date of the earliest bill for which Cohen Lans seeks damages, December 3, 2008. Accordingly, Naseman's laches defense does not apply. Given that Cohen Lans' legal claims are timely, any delay as to an equitable claim is neither unreasonable nor inexcusable as all of the claims involve the same operative facts, documents, and memories.

### b.   Equitable Estoppel

Naseman next argues that equitable estoppel should bar Cohen Lans' claims. (Dkt. No. 131 at 21.) Specifically, he points to Cohen Lans' failure to follow up on Naseman's proposal to

---

[2]     Though quantum meruit is equitable in nature, it is properly characterized as an action at law under New York law. *See Stillman v. InService Am., Inc.*, 455 F. App'x 48, 52 (2d Cir. 2012) (citing *Ogletree, Deakins, Nash, Smoak & Stewart, P.C. v. Albany Steel, Inc.*, 243 A.D.2d 877, 879 (N.Y. App. Div. 3d Dep't 1997)).

settle the claims between the two parties in the summer of 2009 and to the failure of Cohen Lans and its attorneys to enforce the December Settlement.  (*Id.* at 21-22.)

"Equitable estoppel applies to prevent a defendant from benefitting from its own misconduct." *Best v. Bell*, No. 13 Civ. 0163, 2014 WL 1316773, at *8 (S.D.N.Y. Mar. 28, 2014).  Under New York law, equitable estoppel requires proof of "(1) conduct which amounts to a false representation or concealment of material facts; (2) intention that such conduct will be acted upon by the other party; and (3) knowledge of the real facts." *Xerox State & Local Sols., Inc. v. Xchanging Sols. (USA), Inc.*, No. 13 Civ. 3472, 2016 WL 6135660, at *7 (S.D.N.Y. Oct. 20, 2016) (quoting *Smith v. Smith*, 830 F.2d 11, 12 (2d Cir. 1987)).  Moreover, it requires the party asserting estoppel to show "(1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position." *Id.* (quoting *Smith*, 830 F.2d at 12).  "Equitable estoppel is an extraordinary remedy," *Nasso v. Bio Reference Labs., Inc.*, 892 F. Supp. 2d 439, 449 (E.D.N.Y. 2012), that "should be invoked sparingly and only under exceptional circumstances," *Twersky v. Yeshiva Univ.*, 993 F. Supp. 2d 429, 442 (S.D.N.Y.), *aff'd*, 579 F. App'x 7 (2d Cir. 2014).

Naseman's equitable estoppel defense fails as to both of the actions by Cohen Lans. Equitable estoppel requires active concealment or misrepresentation; it is insufficient to merely allege that the party to be estopped remained silent.  *See Tenamee v. Schmukler*, 438 F. Supp. 2d 438, 445 (S.D.N.Y. 2006).  Naseman faults Cohen Lans for not responding to his settlement offer in the summer of 2009, claiming that his reliance on its silence prejudiced him.  However, Naseman does not allege any active concealment or misrepresentation by Cohen Lans sufficient to justify the invocation of the extraordinary remedy of equitable estoppel for that conduct.  *See Nasso*, 892 F. Supp. 2d at 449.  Moreover, Cohen Lans was not silent: it continued to send Naseman bills, making clear its understanding that he was still obligated to pay.

16

Equitable estoppel is similarly unjustified with regard to Naseman's allegations in connection with the December Settlement.  Naseman claims that estoppel is justified on the basis of "concealment and misrepresentation by Cohen Lans . . . in losing the December Settlement as well as failing to promptly take effective actions to enforce the December Settlement."  (Dkt. No. 131 at 22.)  However, Naseman fails to describe how he relied on Cohen Lans' specific concealment and misrepresentation, and he has failed to provide any evidence that would suggest that Cohen Lans intentionally engaged in any such behavior.  Even taking all of the facts as Naseman alleges them, there are no "exceptional circumstances" here justifying equitable estoppel.  *Twersky*, 993 F. Supp. 2d at 442.

### c.    Unclean Hands

Finally, Naseman argues that Cohen Lans' equitable claims should be dismissed due to unclean hands.  (Dkt. No. 131 at 25-26.)  The gravamen of Naseman's claim is that Cohen Lans is not entitled to legal fees resulting from its own failure to secure a settlement.  (*Id.*)

Not only is this claim largely duplicative of Naseman's theory of relief on his counterclaims, discussed at length below, but it is also insufficient to assert the defense of unclean hands.  "Courts apply the maxim requiring clean hands where the party asking for the invocation of an equitable doctrine has committed some unconscionable act that is 'directly related to the subject matter in litigation' and has injured the party attempting to invoke the doctrine."  *PenneCom B. V. v. Merrill Lynch & Co.*, 372 F.3d 488, 493 (2d Cir. 2004) (quoting *Weiss v. Mayflower Doughnut Corp.*, 135 N.E.2d 208, 210 (N.Y. 1956)).  "Specifically, the party asserting unclean hands must prove that '(1) the offending party is guilty of immoral, unconscionable conduct; (2) the conduct was relied upon by the asserting party and (3) the asserting party was injured as a result.'"  *Residential Capital, LLC v. ResCap Borrower Claims Trust*, No. 15 Civ. 5423, 2016 WL 1192690, at *6 (S.D.N.Y. Mar. 22, 2016) (quoting *In re*

17

*Cohen*, 422 B.R. 350, 381 (E.D.N.Y. 2010)).  Naseman has provided no evidence to suggest that Cohen Lans engaged in any conduct that was immoral or unconscionable so as to make the requisite initial showing to justify a finding of unclean hands.

### 4.  Prejudgment Interest

In an action in diversity, the award of prejudgment interest is governed by state law.  *See Schwimmer v. Allstate Ins. Co.*, 176 F.3d 648, 650 (2d Cir. 1999).  Under New York law, "[i]nterest shall be recovered upon a sum awarded because of a breach of performance of a contract, . . . except that in an action of an equitable nature, interest and the rate and date from which it shall be computed shall be in the court's discretion."  N.Y. C.P.L.R. § 5001(a).[3]  Interest in a breach of contract action is awarded at the statutory prejudgment interest rate of nine percent.  *See id.* § 5004.  "Where the plaintiff's damages were incurred at various times, interest may be computed from a 'single reasonable intermediate date' between the dates on which the plaintiff started and stopped incurring damages."  *Tackie v. Keff Enterprises LLC*, No. 14 Civ. 2074, 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (quoting N.Y. C.P.L.R. § 5001(b)).

Here Cohen Lans proposes that it should be awarded prejudgment interest at the statutory rate of nine percent beginning from March 1, 2008, as the bulk of the amount owed arose from bills issued between December and May of 2008.  It calculates the total interest from March 1, 2008, to March 31, 2016, at $474,488.23.  (Dkt. No. 129 at 13.)  Because the Court finds this calculation reasonable, and Naseman has not disputed it, Cohen Lans should be awarded prejudgment interest at the rate of nine percent from March 1, 2008.

---

[3]     Because an account stated claim is generally considered to be equitable in nature, the award of prejudgment interest is at the discretion of the Court.  See *EMI Music Mktg. v. Avatar Records, Inc.*, 364 F. Supp. 2d 337, 345 (S.D.N.Y. 2005).  Here, particularly in light of the long delay between the accrual of the claim and its disposition and the breach of contract claim also justifying relief, the Court, in its discretion, awards prejudgment interest on the account stated claim.  *See id.*

### B.  Naseman's Counterclaims

Cohen Lans and the additional Counterclaim-Defendants move for summary judgment on Naseman's counterclaims for breach of contract and malpractice.  (Dkt. No. 129 at 13.)

As regards the breach of contract counterclaim, it is duplicative of the malpractice claim and thus fails as a matter of law.  *See Brown Rudnick, LLP v. Surgical Orthomedics, Inc.*, No. 13 Civ. 4348, 2014 WL 3439620, at *10 (S.D.N.Y. July 15, 2014) ("Where [a breach of contract claim is] 'premised on the same facts and seek[s] the identical relief sought in the legal malpractice cause of action,' [it is] redundant and should be dismissed." (quoting *Weil, Gotshal & Manges, LLP v. Fashion Boutique of Short Hills, Inc.,* 780 N.Y.S.2d 593, 596 (N.Y. App. Div. 1st Dep't 2004))); *Voutsas v. Hochberg*, 103 A.D.3d 445, 446 (N.Y. App. Div. 1st Dep't 2013) ("Moreover, the fraud, breach of fiduciary duty and breach of contract causes of action all arose from the same facts as the malpractice claim and alleged similar damages, and were therefore properly dismissed as duplicative of the deficient malpractice claim.").  Here, Naseman's breach of contract counterclaim arises from facts that are identical to his malpractice claim and seeks identical relief.  It should thus be dismissed.

And as regards the malpractice counterclaim, it fails for two reasons.  First, with respect to the individual Counterclaim-Defendants, the malpractice claim is time-barred as it was raised beyond the three-year statute of limitations and no recoupment is available.[4]  An action for malpractice is subject to a three-year statute of limitations, N.Y. C.P.L.R. § 214, which accrues when the alleged malpractice occurs, *Shumsky v. Eisenstein*, 750 N.E.2d 67, 69 (N.Y. 2001).

---

[4]       This argument was raised in a motion to dismiss the counterclaim as to Dan Rottenstreich, filed on September 30, 2015.  (Dkt. No. 95.)  The Court denied the motion to dismiss as moot, in light of the motion for summary judgment, but noted that the Court would consider arguments raised in the motion to dismiss on summary judgment.  (Dkt. No. 151.)  In any event, the Counterclaim-Defendants make this argument anew in support of their motion for summary judgment.  (Dkt. No. 129 at 23.)

Cohen Lans terminated its representation of Naseman in July of 2009.  Thus, the period in which

Naseman could assert a malpractice claim expired in July of 2012, rendering the malpractice

counterclaim untimely.

However, "[t]he statute permits a 'defendant to assert an otherwise untimely claim which

arose out of the same transactions alleged in the complaint, but only as a shield for recoupment

purposes, and does not permit a defendant to obtain affirmative relief.'"  *Estate of Mantle v.*

*Rothgeb*, 537 F. Supp. 2d 533, 544 (S.D.N.Y. 2008) (quoting *DeMille v. DeMille*, 5 A.D.3d 428,

429 (N.Y. App. Div. 2d Dep't 2004)).  As to Cohen Lans, therefore, the counterclaim may still

be asserted "to the extent of the demand in the complaint notwithstanding that it was barred at

the time."  N.Y. C.P.L.R. § 203(d).  Yet the counterclaim is time-barred against the non-Plaintiff

Counterclaim-Defendants, against whom no recoupment is available.

Second, as to Cohen Lans, Naseman's counterclaim fails on the merits.  Even taking

Naseman's allegations as true, Cohen Lans' actions do not constitute malpractice as a matter of

law.

To prevail on a claim for malpractice under New York law, Naseman must demonstrate

"that the attorney was negligent, that the negligence was a proximate cause of the injury and that

[he] suffered actual and ascertainable damages."  *Rubens v. Mason*, 527 F.3d 252, 254-55 (2d

Cir. 2008) (quoting *Rubens v. Mason*, 387 F.3d 183, 190 (2d Cir. 2004)).

As to Naseman's numerous complaints about Cohen Lans' trial strategy and preparation,

causation and actual damages are absent as a matter of law because Naseman prevailed in the

Harding Action.  "To establish the elements of proximate cause and actual damages for a claim

of legal malpractice, the plaintiff must show that 'but for the attorney's negligence, what would

have been a favorable outcome was an unfavorable outcome.'"  *Stonewell Corp. v. Conestoga*

*Title Ins. Co.*, 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010) (quoting *Zarin v. Reid & Priest*, 184

A.D.2d 385 (N.Y. App. Div. 1st Dep't 1992)).  Cohen Lans successfully achieved the dismissal of Harding's complaint (Dkt. No. 145 ¶ 36-38, 40), which is a favorable outcome.  Any alleged negligence by Cohen Lans in connection with opposing Harding's claims fails to satisfy the proximate causation and actual damages requirements, as Naseman has not alleged that he suffered an unfavorable outcome as a result.

Naseman also claims that Cohen Lans committed malpractice when it lost a motion for legal fees in the Harding Action.  But Naseman again fails to allege Cohen Lans' negligence or that such negligence was the proximate cause of an adverse outcome.  (*See* Dkt. No. 145 ¶ 45.) Naseman does not allege facts suggesting what Cohen Lans did or did not do that led to the failure of Naseman's claim for fees.  Indeed, Judge Patterson dismissed Naseman's fees counterclaim on the basis of the language of the PSA, whose existence long predated Naseman's engagement of Cohen Lans.  (Dkt. No. 138 Ex. 5 at 53.)  And the Second Circuit affirmed, again relying solely on the language of the PSA.  *Harding v. Naseman*, 377 F. App'x 48, 50 (2d Cir. 2010) ("New York courts strictly construe provisions of property settlement agreements that provide for the recovery of attorneys' fees in the event of subsequent litigation and the district court so construed the instant agreement in dismissing Naseman's counterclaim." (citation omitted)).  Because the failure of Naseman's fees counterclaim was entirely due to contractual language that was outside the control of Cohen Lans to alter, it cannot have been caused by Cohen Lans' negligence.

Finally, Naseman has failed to show that Cohen Lans performed negligently in failing to achieve a settlement.  Naseman claims that a settlement had been agreed to but was not executed as a result of Cohen Lans' negligence.  However, the record makes clear that the failure of the settlement was instead the result of Naseman's own unwillingness to agree to a confidentiality provision therein and not by any negligence on the part of Cohen Lans—there is no genuine

21

dispute about this conclusion.  *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing

parties tell two different stories, one of which is blatantly contradicted by the record, so that no

reasonable jury could believe it, a court should not adopt that version of the facts for purposes of

ruling on a motion for summary judgment.").

Examining the circumstances surrounding the failed settlement, it becomes clear that

Naseman refused to agree to a confidentiality provision, which resulted in the demise of the

settlement.  Cohen—in an email sent on December 20, 2007, to Harding's counsel on which

Naseman was copied—made clear that, in the context of the putative settlement, the parties

"never discussed anything about a confidentiality agreement."  (Dkt. No. 137 Ex. 3.)  Naseman

responded to the Cohen Lans attorneys that he "must be able to respond to persons who now may

question my character, etc based upon her filings."  (*Id.*)  Naseman encouraged the attorneys to

"take a look at the existing confidentiality provision in the PSA."  (*Id.*)  Rottenstreich responded

to Naseman: "The release will NOT contain a confidentiality provision.  That's a deal breaker."

(*Id.*)  Naseman did not respond to the email and did not object to the characterization of a

confidentiality provision as a "deal breaker."  This understanding is reflected in later emails

between Cohen Lans and Harding's counsel, which describe Cohen Lans' consultation with

Naseman and his continued refusal to agree to a settlement including a confidentiality provision.

(Dkt. No. 137 Ex. 6.)

Naseman has presented no evidence suggesting that he was willing to agree to a

settlement with a confidentiality provision.  In light of this, there is no genuine dispute about the

reason for the failure of the settlement, and Naseman has certainly failed to allege facts that

suggest that Cohen Lans' attempts at settlement were "wrongful or negligent."  *Jaffe & Asher*

*LLP v. Ross*, 6 A.D.3d 357, 358 (N.Y. App. Div. 1st Dep't 2004); *see also Engelke v. Brown*

*Rudnick Berlack Israels LLP*, 111 A.D.3d 444 (N.Y. App. Div. 1st Dep't 2013) (holding that a

plaintiff must "show with sufficient certainty that he would have been able to settle . . . and thereby have avoided or reduced his costs" in order to state a claim for malpractice).

## IV.    Conclusion

For the foregoing reasons, Cohen Lans' and the additional Counterclaim-Defendants' motion for summary judgment is GRANTED and Naseman's motion for summary judgment is DENIED.  The Clerk of Court is directed to enter judgment in favor of Cohen Lans in the amount of $651,867.68 plus nine percent prejudgment interest from March 1, 2008.

The Clerk of Court is directed to close the motions at Docket Number 123 and Docket Number 133 and to close the case.

SO ORDERED.

Dated: February 3, 2017
New York, New York

_____
J. PAUL OETKEN
United States District Judge

*COPY MAILED TO PRO SE PARTY BY CHAMBERS*